J-S53038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN CORLISS | : | |
| | : | |
| Appellant | : | No. 1232 EDA 2020 |

Appeal from the Order Entered May 27, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000743-1997

BEFORE: SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    Filed: April 30, 2021

Justin Corliss appeals the order of the Court of Common Pleas of Monroe County (PCRA court)[1] denying his petition for a writ of *coram nobis*. In 1998, following a jury trial, Corliss was found guilty of several sexual offenses against the victim, D.G., and he was sentenced to a prison term of four to ten years. He now asserts that his convictions must be vacated because judges and prosecutors have conspired to obscure evidence of his innocence.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that Corliss disputes that this appeal arises from a petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. His position is that the PCRA does not apply and that the common law writ of *coram nobis* is a viable means of correcting his asserted errors. As explained below, the "PCRA" designation is apt.

However, because all of the factual and legal claims now advanced by Corliss are procedurally barred, the order on review is affirmed.

**I.**

Corliss currently has appeals pending in three separate matters, each involving similar allegations of sexual abuse against minors.[2] The present case concerns D.G., who was a 14-year-old co-worker of Corliss at a pet store in 1997. After D.G. came forward about an ongoing sexual relationship with Corliss, he was charged with statutory sexual assault, aggravated indecent assault, indecent assault and corruption of minors. At the time, Corliss was about 32 years old.

Samples were obtained from D.G.'s underwear for DNA testing a few days after she divulged to the police that she and Corliss had been having sexual interactions.[3] Those samples were compared to the DNA profile obtained from Corliss' blood. The lab report detailing the DNA comparison, however, was excluded from the evidence at trial because some of the tested

---

[2] The pending case at appellate docket number 1239 EDA 2020 began in 2013 when Corliss' minor daughter, C.C., informed her mother that Corliss had touched her inappropriately under her pants between 2009 and 2012. The case at appellate docket number 1272 EDA 2020 also began in 2013 when the minor daughter of Corliss' former girlfriend, R.V., reported similar abuse between 1995 and 1997. Both of those cases were tried together in 2016.

[3] D.G. and her parents contacted the police on July 9, 1997, which was the day of the final time she and Corliss had sexual intercourse. She was interviewed by police two days later, and on July 13, 1997, a pair of her underwear was taken to a crime lab for DNA testing.

specimens taken from D.G.'s underwear contained no DNA or were simply "uninterpretable." The prosecution described the report as "inconclusive" but maintained that Corliss could not be excluded as a contributor of DNA on the clothing. *See* Pre-trial Hearing Transcript, 6/16/98, at pp. 36-37.

Corliss then moved to compel the production of the lab test materials so that he could hire his own expert to ascertain whether his DNA could be excluded as a match. The trial court denied the motion, ruling in part that even if Corliss could prove his DNA was absent from the underwear, it would not be exculpatory because the alleged offenses took place on multiple dates other than when D.G. wore that clothing. *Id*. In sum, this lack of relevance precluded the defense from conducting its own DNA testing. *See* Trial Transcript, 7/9/1998, at pp. 61-62.

Corliss was found guilty of the above charges in 1998. He filed numerous appeals and petitions for post-conviction relief, none of which were successful. *See e.g., Commonwealth v. Corliss*, 750 A.2d 366 (Pa. Super. 1999) (unpublished memorandum) (affirming judgment of sentence on direct appeal); *Commonwealth v. Corliss*, 778 A.2d 732 (Pa. Super. 2001) (unpublished memorandum) (affirming denial of first PCRA petition); *Commonwealth v. Corliss*, 841 A.2d 571 (Pa. Super. 2003) (unpublished memorandum) (affirming denial of second PCRA petition).

Corliss was not granted parole and he completed his full prison term in 2008. Upon his release, Pennsylvania's Megan's Law required Corliss to

register as a sexual offender. After Corliss was charged with new sexual offenses in 2013, it was discovered that he had violated those registration requirements. He challenged the violation by contesting the underlying convictions via a petition for a writ of *coram nobis*.

The filing was construed as an untimely PCRA petition and that finding was upheld on appeal. **See Commonwealth v. Corliss**, 709 EDA 2014 (Pa. Super. December 2014) (unpublished memorandum) (reiterating that the PCRA subsumes all common law remedies, including *coram nobis*, making the PCRA the sole means of obtaining post-conviction relief in Pennsylvania).

It was not until 2017 that Corliss hired an expert (Dr. Monte Miller) to evaluate the DNA report that was disclosed to the defense but excluded from trial in 1998. According to a report compiled by Dr. Miller dated March 1, 2017, the DNA samples taken from D.G.'s underwear did not match the DNA of Corliss, excluding him as a possible contributor of the tested samples. Dr. Miller stated in his report that while there was a possible semen stain on the underwear, the DNA that was foreign to D.G. on the garment did not originate from that stain. Dr. Miller speculated that no DNA was taken from the semen stain at all.

Corliss filed a "Petition for Writ of Error *Coram Nobis*" on March 3, 2020, which was over three years after he obtained Dr. Miller's report. In the *coram nobis* petition (his second), Corliss argued that the absence of his DNA on D.G.'s underwear could have resulted in a different trial verdict. He also

claimed that Dr. Miller's testimony proves that since the trial in 1998, the prosecutors and judges assigned to his case have misrepresented the DNA report as incriminating evidence. According to Corliss, Dr. Miller's testimony shows that the suspected semen stain on D.G.'s clothing was a result of her sexual relations with someone other than himself.

The PCRA court held an evidentiary hearing on the *coram nobis* petition on January 23, 2020, and Dr. Miller testified. **See** Hearing Transcript, 1/23/2020, at pp. 125-148. He discussed his review of the DNA report from 1998 and concluded that it was unlikely that the specimens taken from D.G.'s underwear were actually semen: "I'm extremely doubtful that what they found was a fresh semen stain, No. 1, because the way that they have written it; but No. 2, because they didn't get any DNA from it. That doesn't rule it out but I'm not really sure they found semen." *Id*. at p. 135.

The PCRA court issued an opinion outlining the reasons for its denial of Corliss' petition for a writ of *coram nobis*. **See** PCRA Court Opinion, 5/27/2020. First, the PCRA court construed Corliss' filing as an untimely PCRA petition that does not satisfy the after-discovered evidence exception to the PCRA's time-bar. *Id*. at 2-8.

Next, the PCRA court ruled that even if the claim was timely, it would afford Corliss no relief because the evidence he sought to rely upon would be

inadmissible at a new trial. The PCRA court found that the Rape Shield law[4] would preclude evidence that D.G.'s underwear contained a seminal stain caused by someone other than Corliss. *Id*. at 9-10.

Finally, the PCRA court found that Corliss' claim fails because the lack of his DNA on D.G.'s underwear in no way proved his actual innocence or otherwise entitled him to any post-conviction remedies. *Id*. at 10-11. The purported absence of his DNA did not undermine any of the evidence that was presented to the jury at trial. For example, D.G. had testified that during the last time they had intercourse, Corliss had only ejaculated on his own clothing, which would be consistent with Dr. Miller's opinion that none of Corliss' semen was on D.G.'s underwear.

Corliss moved the PCRA court to correct perceived errors in the opinion, arguing that it had inaccurately described the relevant facts without adequate citation to the record. The PCRA court issued a statement pursuant to Pa.R.A.P. 1925(a), wherein it clarified and enlarged upon the citations in the opinion, albeit not to Corliss' satisfaction. *See* PCRA Court 1925(a) Statement, 6/24/2020.

---

[4] Pennsylvania's Rape Shield statute, 18 Pa.C.S. § 3104, prohibits the admission of evidence at trial regarding the victim's past sexual conduct with individuals other than the defendant.

Corliss timely appealed from the order denying his petition. In his brief, he concedes that he cannot plead and prove a meritorious claim under the PCRA. He insists, rather, that he is eligible for the common law writ of *coram nobis*,[5] which he believes is available where government obstruction has thwarted an otherwise valid PCRA claim.

The four issues Corliss presents in his brief, which he filed *pro se*, are as follows:

> 1. Did [the PCRA court] intend to obstruct the fair administration of justice when his opinion is rife with *ex parte* claims, deliberate misrepresentations, and fake citations, designed to mislead this reviewing court, rendering it not entitled to the presumption of correctness?
>
> 2. Did the [PCRA] court err in construing a *coram nobis* petition as a "PCRA [petition]" for the purpose of delaying the relief due, of vacating the conviction obtained, and to cover up twenty-two (22) years of the Monroe County District Attorney's Office deliberately obstructing access to the remedies of a direct appeal and the PCRA?
>
> 3. Did the [PCRA] court err in finding that incontrovertible physical evidence of someone other than the accused had sexual intercourse with the minor complainant, at the relevant time, as not being relevant to her credibility and [Corliss'] constitutional right to present a defense, when [D.G.] never admitted to who she actually had sexual intercourse with, fraudulently claiming she was otherwise a "virgin?"
>
> 4. Would the fact of the Monroe County District Attorney's office deliberately misrepresenting exculpatory DNA results as being

---

[5] At common law, a writ of *coram nobis* could be used to "challenge the validity of a judgment based on facts not before the court when the judgment was entered." **Commonwealth v. Sheehan**, 285 A.2d 465, 467 (Pa. 1971).

"inconclusive," to obstruct the fair administration of justice, act to bar retrial under the double jeopardy clause?

Appellant's Brief, at 4-5.

In response, the Commonwealth argues both in its brief and its motion to quash the appeal that Corliss' claims are time-barred by the PCRA, previously litigated or waived, and unavailable because Corliss has already completed the full term of his sentence.

## II.

The preliminary issue is whether the grounds asserted in Corliss' *coram nobis* petition were subject to the PCRA's filing deadlines.[6]  Importantly, Corliss concedes that he cannot prevail unless it is determined that the alleged judicial and prosecutorial fraud renders the PCRA inapplicable.  He correctly recognizes that he does not qualify for PCRA remedies because many years have passed since his judgment of sentence became final, he has completed the full term of his sentence, and he has exhausted his PCRA and appellate remedies.  The gist of his argument is that he should not be bound by the PCRA because judges and prosecutors intentionally misrepresented a DNA report as "inconclusive," preventing him from demonstrating that the report is, in fact, exculpatory.

---

[6] "[T]he standard of review is whether the PCRA court's findings are supported by the record and free of legal error." **Commonwealth v. Pitts**, 981 A.2d 875, 878 (Pa. 2009).

Contrary to Corliss' interpretation of the law, the PCRA clearly *does* encompass exactly the types of claims that he now asserts. As we stated in a decision in 2013 affirming the denial of an earlier *coram nobis* petition filed by Corliss, "[t]he PCRA subsumes common law remedies where the relief sought is available under the PCRA[.]" ***Corliss***, 709 EDA 2014, at 2-4 (footnote omitted).[7] The PCRA encompasses all common law post-conviction remedies, including *coram nobis*. ***See Commonwealth v. Descardes***, 136 A.3d 493, 503 (Pa. 2016).

Section 9545(b)(1)(i) makes "government interference" an exception to the one-year filing deadline running from the date that a judgment of sentence

---

[7] The PCRA provides in relevant part:

> This [PCRA] provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. ***The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis***. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction. Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.

42 Pa.C.S. § 9542 (emphasis added).

becomes final.[8]  To satisfy this particular exception, a petitioner must show that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]"  42 Pa.C.S. § 9545(b)(1)(i).  Under the applicable version of Section 9545(b)(2), such a claim had to be raised within 60 days from the date that it could have been presented.[9]

Since 1998, when the DNA report was excluded from trial, Corliss has disputed that it is "inconclusive" and inadmissible.  He has also maintained that the report exonerates him.  All the while, Corliss could have hired his own expert to review the report and assess its conclusions, methodology and terminology.  Yet he did not do so until 2017, by which time he had already

_____

[8] It is well established that the PCRA encompass asserted violations of **Brady v. Maryland**, 373 U.S. 83 (1963), the seminal case compelling the government's disclosure of exculpatory evidence.  Where a PCRA petitioner alleges that a delay in making a claim for post-conviction relief arose from a **Brady** violation, Section 9545(b)(2) of the PCRA applies.  **See generally Commonwealth v. Natividad**, 200 A.3d 11 (Pa. 2019).  In Corliss' direct appeal as to cases 1749-CR-2013 and 2173-CR-2013, we explained that when a **Brady** claim is alleged, there is still a duty on the part of the defense to perform due diligence and conduct reasonable investigation.  **See Commonwealth v. Corliss**, 108 EDA 2017, at 20-25 (Pa. Super. Dec. 8, 2017).

[9] Section 9545(b)(2) was amended on October 24, 2018, extending the time for filing from 60 days from the date the claim could have been presented to one year.  This amendment applies to claims arising on or after December 24, 2017.  **See** Act 2018, Oct. 24, P.L. 894, No. 146, § 3.  Corliss' claim arose long before that effective date.

exhausted his direct appeal and post-conviction remedies under the PCRA and served the full term of his sentence.

Another three years passed before he filed the present *coram nobis* petition. Corliss has offered no logical explanation for why he could not have acted sooner to establish that the report exonerates him. As the claims of government obstruction/fraud are within the ambit of the PCRA, and Corliss concedes he cannot satisfy any recognized exception to the PCRA's filing deadline, the PCRA court properly found that his petition is barred.

Having disposed of the case in that manner, it is unnecessary for us to reach the merits of his remaining legal claims or address the litany of factual disputes littered throughout his brief. To the extent we have not specifically addressed these other points, we adopt the reasoning of the PCRA court, as outlined in its opinions and clarifying statement.[10]

Because we are affirming the PCRA court's denial of relief for the timeliness reasons set forth in its opinion, the Commonwealth's motion to quash the appeal is denied as moot. *See Commonwealth v. Corliss*, 2468 EDA 2016 (Pa. Super. May 9, 2017) (unpublished memorandum) (affirming

---

[10] Regardless of whether Corliss agrees with how prosecutors and judges have construed the facts and evidence in this case, "this Court may affirm a PCRA court's decision on any grounds if the record supports it." *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010). The indisputable procedural history of this case, the relevant transcripts, and Corliss' longstanding possession of the DNA report, all support the PCRA court's decision to dismiss Corliss' petition as untimely filed.

- 11 -

denial of PCRA petition on timeliness grounds and denying motion to quash appeal as moot).

Motion to quash denied.  Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 4/30/21*